UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| ANNETTE NABORS, surviving spouse of KENNETH NABORS, deceased | CIVIL ACTION NO. 12-cv-00827 |
| VERSUS | JUDGE DOHERTY |
| METROPOLITAN LIFE INSURANCE COMPANY | MAGISTRATE JUDGE HANNA |

### REPORT AND RECOMMENDATIONS

Pending before this Court is the motion to dismiss, under Fed. R. Civ. P. 12(b)(6), which was filed by the defendant, Metropolitan Life Insurance Company (Rec. Doc. 6). The motion is opposed. (Rec. Doc. 9). The motion was referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this Court. For the following reasons, it is recommended that the motion be GRANTED IN PART and DENIED IN PART AS MOOT.

### FACTUAL BACKGROUND

This action was originally filed in state court. It was then removed to this forum. The following factual allegations are set forth in the plaintiff's petition.

The plaintiff is Annette Nabors, the widow of Kenneth Nabors. Mr. Nabors was employed by the defendant, Metropolitan Life Insurance Company ("Met Life"), for nineteen years, beginning in 1990 and ending in 2009. In June 1995, Mr. Nabors was diagnosed with hemachromatosis, an inherited condition that causes the body to absorb too much iron and can lead to life-threatening problems such as cancer, heart problems, and liver disease. In 1996, Mr. Nabors underwent a liver transplant, developed Hepatitis C, and underwent chemotherapy for four years. Beginning in 2000, Mr. Nabors was on disability leave from his employment for eighteen months. He then returned to work. At some point thereafter, Mr. Nabors requested a reasonable accommodation of his medical condition in the form of a Senior Partnership (055) Contract, which would have allowed him a more flexible work schedule and some relief from his employer's production quotas. His request was denied.

Mrs. Nabors alleges that her husband was forced to retire on September 1, 2009.[1] She claims that this employment action evidenced discrimination against Mr. Nabors on the basis of Mr. Nabors's medical condition. In a charge of discrimination signed by Mr. Nabors on January 19, 2011, Mr. Nabors represented that he was subjected to unfair treatment when he was not allowed to apply for the Senior Partner

---

[1] Rec. Doc. 1-2 at 7.

(055) Contract instead of being forced to retire. He represented that the discrimination occurred at the earliest and also at the latest on September 18, 2009.[2]

Mrs. Nabors filed this lawsuit on February 14, 2012. (Rec. Doc. 1-2). She asserted an employment discrimination claim based on handicap, disability, or impairment under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and also under the Louisiana Handicap Discrimination Act ("LHDA"), La. R.S. 46:2254.

Met Life removed the lawsuit to this forum, alleging that the plaintiff's ADA claim raises a federal question within this Court's original jurisdiction under 28 U.S.C. § 1331. Met Life alternatively alleges that the parties are diverse in citizenship and the amount in controversy exceeds the jurisdictional minimum, satisfying the criteria for federal court jurisdiction under 28 U.S.C. § 1332.

Met Life then filed the instant motion to dismiss, arguing that neither the plaintiff's ADA claim nor her state-law claim was timely.

---

[2] Rec. Doc. 1-2 at 7.

## ANALYSIS

### A. THE STANDARD FOR ANALYZING A RULE 12(B)(6) MOTION TO DISMISS

A motion to dismiss for failure to state a claim, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, is appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim.[3] When considering such a motion, a district court must limit itself to the contents of the pleadings, including any attachments thereto.[4] The court must accept all well-pleaded facts as true, and it must view them in the light most favorable to the plaintiff.[5] However, conclusory allegations and unwarranted deductions of fact are not accepted as true,[6] and courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[7]

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[8] The allegations must be sufficient

---

[3] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

[4] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

[5] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted), quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

[6] *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982), citing *Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir. 1974); *Collins*, 224 F.3d at 498.

[7] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

[8] *Bell Atlantic*, 127 U.S. at 570.

"to raise a right to relief above the speculative level,"[9] and "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action."[10] "While a complaint . . . does not need *detailed* factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[11] If the plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed."[12]

A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[13] "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[14]

---

[9] *Bell Atlantic,* 127 U.S. at 555.

[10] *Bell Atlantic,* 127 U.S. at 555, quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004).

[11] *Bell Atlantic*, 127 U.S. at 555 (citations, quotation marks, and brackets omitted; emphasis added). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009).

[12] *Bell Atlantic*, 127 U.S. at 570.

[13] *Ashcroft*, 129 S.Ct. at 1949.

[14] *Ashcroft*, 129 S.Ct. at 1950.

Therefore, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim."[15]

A defendant's argument that a claim is untimely is appropriately presented by means of a Rule 12(b)(6) motion to dismiss. When a defendant has a statute of limitations defense, dismissal at the 12(b)(6) stage is proper when it is evident from the complaint that the action is time-barred and the complaint fails to raise a basis for tolling the applicable time limitation.[16] Therefore, "the inclusion of dates in the complaint indicating that the action is untimely renders it subject to dismissal for failure to state a claim."[17] In other words, "Rule 12(b)(6) forms a proper basis for dismissal for . . . a claim that a complaint was untimely filed."[18]

---

[15] *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009), quoting *Bell Atlantic*, 127 U.S. at 556. See also *In Re Southern Scrap,* 541 F.3d 584, 587 (5th Cir. 2008).

[16] *Jaso v. The Coca Cola Co.*, 435 Fed. App'x 346, 351-352 (5th Cir. 2011), citing *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003); 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure, § 1357 at 714–21 (3d ed. 2004).

[17] *Jones*, 339 F.3d at 366.

[18] *Bowers v. Nicholson*, 271 Fed. App'x 446, 449 (5th Cir. 2008).

**B.     MET LIFE'S MOTION TO DISMISS THE PLAINTIFF'S ADA CLAIM IS MOOT**

Met Life originally argued that the plaintiff's ADA claim is untimely because Mr. Nabors had three hundred days from the alleged act of discrimination to file a charge with the EEOC[19] but failed to meet that deadline. According to the charge of discrimination attached to the plaintiff's petition, Mr. Nabors signed the discrimination charge on January 19, 2011, and it was filed with the EEOC on January 21, 2011, which is 490 days after September 18, 2009, the alleged last date of discrimination.[20] Met Life argued, in support of its motion to dismiss, that this lawsuit was filed more than three hundred days after Mr. Nabors's EEOC claim was filed, in violation of the relevant timing requirement.

In her opposition brief, however, the plaintiff argued that Mr. Nabors had actually initiated his discrimination claim in a charge dated May 4, 2010, which was within the statutory three hundred day period. The plaintiff submitted a copy of a letter sent by Mr. Nabors's counsel to the EEOC on May 4, 2010, with an attached

---

[19]     42 U.S.C. § 2000e-5(e); *Huckaby v. Moore*, 142 F.3d 233, 238 (5th Cir. 1998).

[20]     Rec. Doc. 1-2 at 7.

charge of discrimination.[21] In response thereto, Met Life withdrew its motion to dismiss the plaintiff's ADA claim.[22]

Accordingly, the undersigned finds that Met Life's motion to dismiss the plaintiff's ADA claim has been withdrawn and recommends that, to the extent Met Life's motion seeks dismissal of the ADA claim, the motion should be denied as moot.

### C.   THE PLAINTIFF'S STATE-LAW CLAIM IS UNTIMELY

In her petition, the plaintiff alleges that Met Life's failure to permit Mr. Nabors to enter into a Senior Partner (055) Contract discriminated against him on the basis of his medical condition and physical impairments in violation of the LHDA. In its opposition brief, Met Life argues that the LHDA is not applicable to employment discrimination claims like this one, and that the Louisiana Employment Discrimination Law ("LEDL"), La. R.S. 23:303 *et seq*. is the governing statute.

---

[21]   Rec. Doc. 9-1. The May 4, 2010 charge of discrimination was not attached to the plaintiff's petition and, that reason, could not be considered by the court in ruling on this motion.

[22]   Rec. Doc. 10-2 at 2. Because Met Life voluntarily withdrew its motion regarding the plaintiff's ADA claim, the undersigned was not required to make findings or recommendations with regard to the merits of Met Life's motion concerning that claim, and the extraneous evidence submitted by the plaintiff after Met Life filed its motion was not considered in that regard. Furthermore, the extraneous evidence has no impact on the viability of the plaintiff's state-law claim, which is discussed below.

The LHDA expressly prohibits discrimination on the basis of a handicap by any educational facilities, in real estate transactions, and with regard to programs or activities that receive financial assistance from the state or its political subdivisions.[23] It does not expressly pertain to discrimination in employment. The LEDL, on the other hand, states that "[n]o otherwise qualified disabled person shall, on the basis of a disability, be subjected to discrimination in employment."[24] The undersigned finds, however, that regardless of which of these two statutes is applied, the state-law claim was filed too late and must, for that reason, be dismissed.

Both the LHDA and the LEDL provide for a one-year prescriptive period, which begins to run on the date that the discrimination occurs.[25] The Louisiana Supreme Court has confirmed that a one-year limitations period applies to employment discrimination cases arising under Louisiana state law, and it has held that the prescriptive period starts to run when injury or damage is sustained, which is the date that the plaintiff is notified of the adverse employment action.[26] The one-

---

[23] La. R.S. 46:2254(A).

[24] La. R.S. 23:323(A).

[25] La. R.S. 46:2256(A) reads as follows: "When any handicapped person believes that any person has engaged or is engaging in discriminatory practices, as defined in this Chapter, he shall have one year from the date of the alleged discriminatory act to file a complaint in the appropriate civil district court." La. R.S. 23:303(D) states: "Any cause of action provided in this Chapter shall be subject to a prescriptive period of one year."

[26] *Eastin v. Entergy Corp.*, 2003-C-1030 (La. 02/06/04), 865 So.2d 49, 53-54.

year prescriptive period for LEDL claims is suspended during the pendency of any administrative review or investigation of the claim conducted by the federal Equal Employment Opportunity Commission, but no such suspension "shall last longer than six months."[27] Consequently, the LEDL requires a plaintiff to file suit on his discrimination claim no later than eighteen months after the occurrence forming the basis for the claim.[28]

The plaintiff alleges that any discrimination against Mr. Nabors last occurred on September 18, 2009.[29] Accordingly, a lawsuit based upon that discrimination had to be filed not later than September 18, 2010 (one year after the alleged discrimination) or, at most, not later than March 18, 2011 (eighteen months after the alleged discrimination) in order to be timely. But this suit was not filed until February 2012, well past both the one-year deadline imposed by both statutes and the eighteen-month deadline permitted under the LEDL.

---

[27] La. R.S. 23:303(D) reads as follows, in its entirety: "Any cause of action provided in this Chapter shall be subject to a prescriptive period of one year. However, this one-year period shall be suspended during the pendency of any administrative review or investigation of the claim conducted by the federal Equal Employment Opportunity Commission or the Louisiana Commission on Human Rights. No suspension authorized pursuant to this Subsection of this one-year prescriptive period shall last longer than six months." See, also, *Ikossi–Anastasiou v. Bd. of Supervisors of La. State Univ.*, 579 F.3d 546, 552 (5th Cir. 2009).

[28] See, e.g., also, *Ikossi–Anastasiou*, 579 F.3d at 552; *Mayes v. Office Depot, Inc.*, 292 F.Supp.2d 878, 888-89 (W.D. La. 2003); *Holliday v. Commonwealth Brands, Inc.*, No.10-2785, 2012 WL 72468, at *2 (E.D. La. Jan. 10, 2012).

[29] Rec. Doc. 1-2 at 7.

Giving the plaintiff the benefit of the doubt and adding the six additional months to the statutory time limit does not change the result in this case. It means only that this lawsuit would have been timely had it been filed not later than March 18, 2011. This suit was not filed within that time limit. Consequently, applying the prescription provision of the LEDL as liberally as possible, the suit is time-barred.

Since both the LEDL and the LHDA provide for one-year prescriptive periods, the suit is prescribed on its face. Under Louisiana law, prescription statutes are strictly construed against prescription and in favor of the claim sought to be extinguished; thus, a construction that favors maintaining an action rather than barring it should usually be adopted.[30] "Ordinarily, the burden of proof is on the party pleading prescription; however, when the plaintiff's petition has clearly prescribed on its face, as here, the burden shifts to the plaintiff to prove that prescription has been suspended or interrupted."[31] Accordingly, Mrs. Nabors has the burden of proving that her claim is not time-barred.

---

[30] *Carter v. Haygood*, 04–0646 (La.1/19/05), 892 So.2d 1261, 1268; *Bailey v. Khoury*, 04–0620 (La.1/20/05), 891 So.2d 1268, 1275; *Bouterie v. Crane*, 92-C-2994 (La. 04/12/93), 616 So.2d 657, 660.

[31] *Rizer v. American Sur. and Fidelity Ins. Co.*, 95-C-1200 (La. 03/08/96), 669 So.2d 387, 388, citing *Younger v. Marshall Industries, Inc.*, 618 So.2d 866, 869 (La. 1993), and *Williams v. Sewerage & Water Bd. of New Orleans*, 611 So.2d 1383 (La. 1993). See, also, *Winstead v. Georgia Gulf Corp.*, 77 Fed. App'x 267, 272 (5th Cir. 2003); *Eastin*, 865 So.2d at 54; *Titus v. IHOP Restaurant, Inc.*, 09-CC-951 (La. 12/01/09), 25 So.3d 761, 764; *Lima v. Schmidt*, 595 So.2d 624, 628 (La. 1992).

Mrs. Nabors has not satisfied that burden. In her opposition brief, she mentioned her state-law claim but did not argue that it was timely or provide an explanation for applying any prescriptive period other than those discussed here nor did she suggest that there was any reason why the prescriptive periods established in the LEDL or the LHDA should be tolled or suspended. Her argument essentially ignored her state-law claims and focused on her contention that her ADA claim was timely.

Accordingly, it is not necessary to decide whether the prescriptive period set forth in the LHDA or the LEDL is controlling; it is not necessary to decide whether a six-month extension of the LEDL's prescriptive period must be applied in this case; and it is not necessary to examine whether there is any basis for suspending or tolling any applicable prescriptive period. This lawsuit was filed more than eighteen months after the allegedly discriminatory action complained about, which is beyond the time period permitted by either potentially applicable statute. The plaintiff has offered no basis for applying a longer prescriptive period. Accordingly, the undersigned finds that the plaintiff's state-law claim has prescribed. For that reason, the undersigned recommends that, to the extent that Met Life's motion seeks dismissal of the plaintiff's state-law claim, the motion should be granted.

## CONCLUSION

The undersigned finds that Met Life withdrew its motion (Rec. Doc. 6) to the extent that it seeks dismissal of the plaintiff's ADA claim. Accordingly, the undersigned recommends that, with regard to the ADA claim, Met Life's motion should be denied as moot.

The undersigned finds that the plaintiff's state-law claim prescribed before this lawsuit was filed. Accordingly, the undersigned recommends that, to the extent that Met Life's motion (Rec. Doc. 6) seeks dismissal of the plaintiff's state-law claim, the motion should be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual

findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana on May 30, 2012.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE